Mr. Song and Mr. Brehm, when you're ready, we'll hear from you. May it please the Court, I am Kevin Brehm, attorney for the appellant, Charlie Song, and I'd like to make some basic points for the Court's consideration. First and foremost, I would like to ask the Court to consider that this appeal for Mr. Song, it raises a single issue, and in fact it's a very narrow detention issue, not really a competency issue at this point. And it's also an issue that I believe would have a very limited application to future cases. This is why I say that. I believe, Your Honor, that in fact government counsel may concur that, although I don't have actual statistics, I think it would be fair to say that the vast majority of criminal cases where mental health issues arise, the defendants have already been held in custody because there's been a determination they're at a flight risk or risk to the safety of the community. But there are those cases, such as Mr. Song's and some of the others in the reported decisions we've provided, where defendants have been released on bond, the Court has determined that they are a sufficient risk to place under certain conditions of bond. He was under house arrest and there was probable cause and he was custodial legacy. He was being released pending trial. Exactly. And so we don't have the constitutional issue. There's probable cause he committed the crime. And so what we really have is everybody seems to accept that some kind of mental investigation needs to be conducted. And the Court concluded that it would be better to do it in custody. Within the 45 days it would be more thorough. And you want it done in an outpatient type of arrangement. Well, true. It seems to me that just comes sort of down to a discretionary where the best analysis can be done. I don't see where it goes any further than that. Do you? Well, Your Honor, I think ultimately that's going to be the point where the District Court is going to arrive. What we're saying is that before you get to that point, in this type of narrow situation where a defendant is out on bond already. Yeah, but that out on bond, he's still in custody, custodial legacy. He was said to be in house arrest. He couldn't leave the house. He had a GPS. He could go to a doctor's appointment. He could go to a couple of other things, come to court. But he was being close and he was in the custody of two people who provided bond. But quite apart from that, if the court were dissatisfied and thought that was unsafe or the government said this is just not working out, you can put him in jail. They had the probable cause to hold him. The constitutional issue of a seizure at this point is not the question. The question, I think, is whether the District Court is entitled to send him to Butner for 45 days for the investigation or as an outpatient. And I don't know why that's a constitutional issue of any kind. Well, Your Honor, maybe that we're seeing the deprivation of liberty at different perspectives. What's the deprivation of liberty? The deprivation of liberty is taking him from his home where he's living with his family under strict conditions and placing him in a prison hospital setting hundreds of miles away for at least 45 days. Well, he asked for a mental exam and so did the government. And the court concluded the best place, the most thorough examination, and the court had three purposes for it. Both sides asked for it. It's Butner. There's no doubt that an evaluation was going to be appropriate. We had actually initiated that idea ourselves and certainly by filing the insanity claim. No, but his custody is restricted to his home. And during the 45 days, his custody will be restricted to the hospital. And then he'll go back home unless there's some reason the court wants to put him in jail. But pre-trial custody, that issue is long gone when he was arrested. Well, I thought, counsel, I thought your issue, if I can necessarily reframe it, but I thought your issue was that before the district court can make a determination of whether to commit Mr. Song in an institutional setting as opposed to an outpatient setting, it has to have a hearing, take evidence, and give reasons for making an in-custody determination for the examination as opposed to an out-of-custody determination for the examination. I thought that was your issue. It is, Judge Agee, and that's the only issue we've raised. And that is a threshold issue before we get to the question of whether the discretion of the court in ordering custody itself was appropriately exercised. We're saying we need as a threshold to have the ability to have an evidentiary hearing so that the court, the district court, can then make an informed discretionary decision. And we didn't get to basically skip that step. We believe it is a critical step, Judge Niemeyer, because the level of the deprivation of liberty being sent to a prison hospital hundreds of miles away is substantially greater, in our minds, than being able to stay in the comfort of your home with your family on a daily basis, even though under very strict conditions. And it's that type of severe deprivation of liberty, whether it's even 45 days, which the courts, I think, pretty clearly recognize, is still very substantial. That, we believe, requires, at the threshold, an evidentiary hearing, which is not going to be burdensome, by any means, on the court or the government. It's not going to be a mini-trial. It's going to be a hearing like you might have on a suppression motion. The government would have the ability of... What evidence did you want to put in? The evidence that we at least anticipate we would have put in for ourselves, although the government, we believe, would start off with their burden, we expect they would have presented evidence through the Bureau of Prisons' mental health staff, like they've done in other cases. Our evidence would be, first of all, Mr. Song, as the record reflects, has had long-term psychiatric treatment. Dr. Sutter is the one who's been seeing him since June of 2010, and she would be our expert if we get to the point of the evaluation of mental health. She would be one witness. The government also identified in numerous pleadings that they had, in fact, contacted three experts in the greater Washington, D.C. area that they deemed appropriate if the district court decided for a non-custodial evaluation process. We would have obtained those names from the government. We would have subpoenaed those doctors to determine exactly what are their qualifications, since the government apparently felt they were sufficient, and also determine their availability, because one of the concerns that the district court has, which is expressed in all the cases, and we don't dispute this, is that in order to do a proper evaluation, there needs to be a sufficient amount of time for the evaluator to have interaction and observation of the person being evaluated. We don't dispute that at all. But we think that an outpatient basis, that could be done sufficiently, because, again, to some extent, when we're talking about a severe deprivation of liberty, we're talking about what are the... He's already sustained a severe deprivation of liberty because of his crime. Well, I understand that, Your Honor, but having over many, many years visited... If the court held him in jail and sent him to Butner, would you have any objection? The original objection to that would be if we thought that the pretrial detention order at the beginning was... The court decided, for whatever reason, to not release him on bond. If we had no objection to the original pretrial detention order, and, again, this goes back to my initial point, once they're being held in custody anyway, absent of any mental health issues being raised, and we are not challenging that pretrial detention order, from that point on, if later mental health issues are raised, we have no problem with the person being sent to whatever appropriate custodial facility there is for evaluation. Now, we might suggest to the court that there might be a custodial facility close by the jurisdiction, as opposed to being sent several hundred miles away to maybe Butner Federal Medical Center. The court said that was the closest one and asked if anybody else had another suggestion. Well, in terms of... At that point, the judge was looking at the Bureau of Prison System. That would have been the closest one. But, otherwise, once they're already in custody and we've not challenged that, then when a mental health issue arises later, I don't believe you need to have the kind of evidence you're hearing. We're asking for here. That's why I say this is a very somewhat limited case that should have limited application in the future because you do have someone, despite your belief the house arrest is a deprivation of liberty, and I certainly agree to that, but it's nowhere near the severity that I see when I visit clients in prisons and jails. Well, it's also subject to an immediate defalcation. He's under the complete control of the court now. In other words, conditions are imposed, but the court can just pull him right back into jail based on the probable cause. His pretrial custody is justified by probable cause that he committed a crime, and the release is a decision based on the statute, the bond statute, that he'll be released if it can be secured. And here they did impose quite a few restrictions on his liberty. He has to stay at home. He can't leave and go around as he wishes, and he can't use computers. There's a lot of things that he can't do that he otherwise, a citizen, would otherwise be entitled to do. Their question is, and both sides have agreed that the necessity for a hearing is there, so we don't have the issue of whether we're going to have a mental examination, so that's determined. And so the only question left is whether that mental examination will take place at Butner or an outpatient basis. Isn't that it? That is it, and I'm not sure if I understood one of your last comments, but once he's been released on bond or whatever stringent conditions, he cannot simply be just yanked back into custody unless he's violated bond conditions, and if he was remanded into custody for alleged violations of bond conditions that we thought did not exist, then we have the right to challenge that, but that's not our situation. If Mr. Song or anybody had been released on bond and then for legitimate proven violations of the bond, were then remanded to custody and then later a mental health issue came up and they were going to be sent off, that puts them back in the posture of the person who's originally detained without any bond. Our case involves someone who's, at the time the mental health issues are raised, is not in custody. They're under severe restrictions of their liberty, nowhere near as substantial as being actually locked up in a prison or jail, and our basic issue in this case is simply if you're going to consider putting them in that more severe, substantial deprivation of liberty, you need to have a very simple evidentiary hearing, and it's not going to be cumbersome or burdensome. What is the standard for the court to determine whether he's going to be examined on an outpatient as opposed to at Butler? What factors is the court directed to use, if any? Well, Your Honor, I think, first of all, the courts over a period of time now, in many cases, have identified our legitimate governmental interest in having the evaluation done in custody. Well, it's not in custody. The court's not interested in the custody. The court's interested in Butler, and Butler is an in-house, it is a custodial hospital where they would be conducted, but the question is what legal factors does the court have to consider in deciding Butler as opposed to outpatient? Well, there the question, I believe, is... I mean, where do we look? Is there a statute that says, makes that decision? No, I don't know of any statute that makes that decision. So what do we look at, then? Is it just in the discretion of the court? It is. The statute says the court may order commitment for personal evaluation. The courts have also recognized that before that's done under due process, there should be the identification of certain important governmental interests that support the evaluation being custodial, and the court can then weigh those against the liberty interest of the defendant in question, and in a sense, do a balancing, and then using discretion, decide how that balance comes out. On the issue of a custodial examination versus no examination, or on the issue of whether their examination is done in-house or outpatient, do we have any cases that consider those factors? I mean... They do. Part of the stuff you're raising is whether you're going to have an examination at all in custody, and he's saying, oh, I don't need one. But here in this case, that's not an issue anymore. And the court looked at the tape. I looked at the tape and talked about the thoroughness of Butner, and she's familiar with Butner, and I think she wasn't comfortable with having an outpatient status for this type of circumstance. There were three questions that were being posed to the staff there. Your Honor, there's no doubt that the district court's comments, and I agree, indicated that based on her personal impressions, much of which would have come from her personal experiences in cases she had had, she had a general impression that when mental health issues are raised, it's best to do a custodial evaluation at the Bureau of Prison's mental health facilities. The problem, as we indicated in our pleadings, is, first of all, we didn't get an opportunity to delve into the factual basis for those impressions or to present evidence to suggest that perhaps in this case at least, because that's what we're interested in, those impressions really shouldn't outweigh... She thought it would be done quicker there too, didn't she? I think she suggested to some extent it might be done quicker, and I believe that in some cases we've mentioned in our pleadings, there's an indication that that's not necessarily the case. But that's certainly a factor we want to be able to address through the evidence. That's why I have to go back to my contention that there was a threshold step that was skipped so we could address all the issues you're mentioning by presentation of evidence and being able to cross-examine any evidence the government presented on those issues. That's all we're asking for here, and again, it's only going to come up in limited circumstances when somebody, whether you consider house arrest stringent restrictions, but they're not actually in what I consider real custody. That is, they're not in a jail or prison. In a sense, then, the judge is deciding if I'm going to commit him for evaluation, it's almost like I'm going to now detain them, although previously they were released on bond. That's a limited number of cases we expect that this will come up, but we think it's clearly serious for the deprivation of liberty that Mr. Song faces in this case to at least have the threshold evidentiary hearing, which we just simply did not have. Okay, thank you. Mr. Dickey. Good morning. May it please the Court, Ryan Dickey for the United States, and I'm an assistant U.S. attorney in the Alexandria Division. I'll just very quickly address a couple of the issues that defense counsel raised. To the extent that he draws a distinction between a defendant who's under house arrest versus one who's being detained pending trial, that's a distinction that the statute itself doesn't draw, and although the district court should be free to consider that, the district court should also have the broad discretion to order a custodial exam. Don't they have to give a reason for it? The district court should give a reason for it, Your Honor, and that was done. What's the reason in this case? In this case, Your Honor, the court gave at least three reasons, completeness, thoroughness, and timeliness. Based on? And the district court did that based on a number of different factors and evidence, competent evidence that was presented to the court. For example, there was the one-hour videotape that had an accompanying transcript that the district court reviewed and specifically said that she reviewed. What did that tell you about inpatient versus outpatient? What that told you, Your Honor, was that this defendant's condition was, and this is in the words of the district court, complicated and nuanced, and that because his mental condition was complicated and nuanced, that's why a more thorough, more complete evaluation was necessary. So in this case, the district court specifically looked at the circumstances surrounding this particular defendant and found that that's what justified having a custodial exam. Based on the evidence presented by the government, did the defendant have an opportunity to present evidence at that hearing? Absolutely, Your Honor. And the defendant had not just one opportunity but multiple opportunities. And if I may, this is a very brief timeline of what happened, but the defense filed the insanity notice on October 9th. That was a Tuesday. And it was the very next day that the district court noticed a hearing on that matter, and it was set for the following Tuesday. And in that order that sets the hearing, the district court explicitly wrote that it was to address the defendant's insanity notice. Two days later, this is October 12th, the defendant filed a motion regarding the mental health examination. And it's customary in the caption of the motion to put the hearing date, if any, and in this case, if the court looks at that motion, the defense said in the caption, hearing, October 16th, 2012. And in the motion, in the body of the motion, the defense asked for certain relief. And there's at least two types of relief that was requested in that motion. First, the defense requested that any examination be done on an outpatient basis, local. And second, the defense requested that the defendant's treating psychiatrist be permitted to sit in and take notes. So it's clear from looking at the motion that the defense expected that the district court, during the October 16th hearing, would address those issues and would rule on those issues. And frankly, that was the government's expectation as well. And the government filed an opposition to that motion on October 15th. That was the day before the hearing. And that's when the government attached and submitted the video and the accompanying transcript. That would have been the first opportunity for the defense to submit whatever evidence the defense wanted or to indicate if there would be any live witness testimony. But even after the hearing, after the district judge had ruled, and in her broad discretion ruled that it would be a custodial exam, in the days that followed, the defense filed a motion for reconsideration. And in that motion for reconsideration, the defense did attach some evidence. And I want to get the name of it right. It was an excerpt from the BOP, Bureau of Prisons Legal Resource Guide. The government filed an opposition. The government attached the Bureau of Prisons Program Statement regarding mental health examinations. And so that was yet another second opportunity that the defense had, if the defense wanted to put in the evidence that we heard this morning. And frankly speaking, this is the first time that the government has heard that the defense ever wanted to put in any testimony from the treating psychiatrist or had intended to or would if given a third opportunity to do this. Did the government argue at that hearing that there should be an in-custody examination as opposed to an outpatient examination? Yes, Judge. In the pleadings that we submitted beforehand, the opposition that was filed prior to the hearing, the government took that position. And during the hearing, the government also took that position. The government was specifically requesting that this examination be done inpatient in a Bureau of Prisons facility. And what else besides the video? And this was a video of Mr. Song being interviewed. Is that right? That's correct, Your Honor. So what else besides that went to the issue of outpatient versus in custody? Well, just to clarify the importance of the videotape interview, Your Honor, that video was roughly a one-hour video of an interview by law enforcement of Mr. Song. It's a consensual interview. And it's done during the time period that he is now alleging that he was insane to the extent that he couldn't understand the nature and wrongfulness of his acts. So that's a crucial piece of evidence here that the district judge had to consider. In addition to that, the defense put in the excerpt from the Bureau of Prisons Legal Resource Guide. That was done on the motion for reconsideration. The government put in the Bureau of Prisons Program Statement regarding mental health examinations. And that does describe the nature, the timeliness, the personnel of who would be conducting this type of examination in a BOP facility. It's basically the who, what, where, when, and why of the examinations done in BOP custody. But in addition to that, the district court specifically mentioned during the hearing the defendant's lengthy history of mental illness and the defendant's demeanor and behavior before the court. And only in addition to all of that evidence did the district judge also say that in her personal experience, and just to clarify something the defense counsel said, the district court did not say that inpatient always had to be done. That's not what the district court said. What the district court said was that, in her experience, inpatient was more thorough than outpatient. And so the question for the district court was, was that more thorough examination necessary here? Was it important here? And the district court found that it was. And it was because the defendant's condition was complicated. His condition was nuanced. It was because of his demeanor in court, because of his demeanor in the video, because of his lengthy history. It was all of those factors and all of that evidence taken into consideration together that justified the custodial examination. If I may, Your Honors, I'll just finish by saying that what the defense is asking for first is for another hearing that he's already received. But more importantly, he's asking this court to create what is essentially what amounts to a rebuttable presumption in favor of the outpatient. And he's saying that it can only be rebutted by live witness testimony. So he also wants this court to dictate the manner in which the government presents its evidence. And that's not required by due process, by the statute, or by the rules of evidence. And unless the court has any questions, the government has no further argument. All right, thank you, Mr. Dickey. Mr. Brown? The government says you had a chance to do what you're asking us to give you the opportunity to do now, and you didn't do it. I believe that's totally incorrect. And we addressed that in our reply brief, so I'll make a few points on that. When you look at a timeline, the notice of insanity was filed October 9th of last year. At the same time, there were a number of other pleadings filed by the defense, a motion to renew previous motions. There have been a number of motions filed initially in this case, such as suppression of statements, dismissal of count two. What the government has not told you is that there were serious and somewhat productive settlement negotiations going on very soon in this case. And at that point, both counsel deemed Mr. Song to be competent. This was settlement over the charges or settlement over the examination? A plea settlement was being discussed vigorously. Because of that, these pretrial motions were withdrawn in anticipation of an actual plea agreement being reached. And, of course, both counsel at that time had to believe Mr. Song was competent in order to even proceed with those types of negotiations, and the government has consistently, in their pleadings, said they do believe he's been competent all along. Those motions were withdrawn. An impasse arose in the negotiations. As a result of the impasse, it appeared this case is going to go to trial. So the case is going to go to trial on October 9th. I filed motions to renew the earlier motions to get them back on the calendar so we could proceed with those pretrial motions. And also it was determined that if it's going to go to trial, one defense that needed to be explored was an insanity defense, which is totally separate and apart from the competency issue. And so that notice was filed also on October 9th. The very next day, October 10th, in a short one-page order, which is Joint Appendix 99, the district court, there had been no particular hearing, including no evidentiary hearing requested at that point, entered this order setting a status hearing to address these different pleadings that had been filed, including the request to basically renew the previous motions and also a request to reschedule the trial date. Those are several matters along with the insanity defense that were going to be addressed in a status hearing. No suggestion in that simple order that there was going to be any evidence taken where the parties were expecting to present evidence at that hearing. As a result, in receiving that notice of the status hearing, I filed a motion two days later, October 12th, acknowledging that there's going to have to be an evaluation because we filed an insanity defense. No dispute about that. And suggesting procedurally certain things that could be done, including that it should be noncustodial evaluation. The status hearing was scheduled for October 16th. On October 15th, the government then filed their pleading in response to the procedures I was suggesting. And at that time, made reference, among other things, to its belief that custodial evaluation be preferred, but also at the same time, clearly indicated they had already talked to three experts in the community that they felt were adequate to do a noncustodial evaluation. And they reiterated having had contact with those individuals in the hearing before the court, when we had the status hearing, and in other pleadings. If anything, it seems that they were, in a sense, dealing with a certain schizophrenia themselves. On the one hand, they're saying, well, we think it should be custodial, although we insist he's competent. Well, gee, we should go ahead and have a custodial examination. Maybe you should examine competency. But, you know, if you decide noncustodial, well, gee, we already talked to three experts in the area that we think are satisfactory. So there's no opportunity to present or suggestion that we present evidence on October 16th. And because that was not obvious to the defense, we didn't present evidence on the 16th. And when the judge, toward the end of that hearing, the status hearing, most of the time, if you look at the transcript, is devoted to discussing should there be a competency evaluation, in addition to what's already been acknowledged will have to be an evaluation of insanity defense. And finally, once the district judge says, I'm going to do a competency evaluation, then toward the end of that hearing, she, without much discussion, says, I think I prefer to be custodial, gives some personal impressions as why, and makes that ruling as custodial. So that having happened, fairly unexpectedly, instead of sitting on the issue, the very next day the defense filed their motion asking explicitly for an evidentiary hearing and making it very clear that we believe that the law, including the appellate decisions in Neal and Newchurch, say that there has to be a threshold requirement of an evidentiary hearing. We were not addressing whether the court properly exercised discretion or not. We weren't getting to that point. And then finally, in that pleading, the very next day, October 17th, was not to present evidence on the issue because the judge already ruled. It was to present exhibits showing why we believe it's critical to have the evidentiary hearing, which we've been deprived of. And that's what we were asking for in that pleading and by attaching those exhibits. And then on October 23rd, the court entered an order without having a hearing or appearance of counsel denying that motion for an evidentiary hearing. We believe that that sets out the accurate timeline. The evidence the court, if you even call it that, at the status hearing October 16th, was this transcript, which, as Judge Agent, we've asked, it has nothing to do with a decision between custodial and non-custodial. It has to do with the court's concern, should I have a competency evaluation in addition to the insanity evaluation? And otherwise, the judge making comments about her view that this was complicated or nuanced or certain things about the defendant's appearance, again, our concern is, how do you cross-examine things of that nature? Evidence is supposed to be not the judge's personal opinion, but what is the actual testimony or exhibits presented at a hearing that we can cross-examine or try to rebut? Thank you so much. Thank you. All right, we'll adjourn court signing die and then come down and recount.
judges: Paul V. Niemeyer, G. Steven Agee, Stephanie D. Thacker